**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND, BALTIMORE DIVISION**

B.N. S.  minor child by her parents and next friends
Christine and Brian Stuart
Plaintiff,

v                                                      CASE NO.  17-CV-2670


Victor Brito,                                          **COMPLAINT 42 U.S.C.  SEC 1983, 4TH & 14TH**
in his official capacity as police chief of the        **JURY TRIAL DEMANDED**
Hagerstown Police Department
50 N Burhans Blvd.
Hagerstown, MD 21740

Hagerstown City Police Department, a Maryland Municipal corporation

P.O. Eichelberger (P4918), Sgt. Constable  (P3910),
Officer Rowe (P5190) and
Officers Unknown, in both their personal capacities and their official
capacities as officer of the Hagerstown Police Department
50 N Burhans Blvd.
Hagerstown, MD 21740


Bob Bruchey, in his official capacity as Mayor of the
City of Hagerstown
One E. Franklin St.
Rm 202
Hagerstown, MD 21740


City of Hagerstown, a Maryland Municipal Corporation

Kristin B. Aleshire, Paul Corderman, Emily Keller, Lewis Metzner
and Donald F. Munson in their official capacity as
Council Members for the City Council of Hagerstown
One E. Franklin St.
Rm 202
Hagerstown, MD 21740


Defendants

<b>COMPLAINT</b>

Now comes the PLAINTIFF B.N.S., a then 15 year old minor, by her parents  and next friends  Christine
and Brian Stuart  ("Plaintiff"), who requests a preventive injunction against the Defendants to halt any
further deprivations of Liberty or Due Process against the Plaintiff, and who sues the Defendants for
money damages and who states:

## SUMMARY OF THE ACTION

1.      On September 19, 2016  Hagerstown Police Department arrived at the scene of an accident where Hagerstown high school student B.N.S. , while riding her bicycle in the afternoon, in broad daylight, and entering an intersection, was struck by a motorist. After being questioned by Emergency Medical Technicians (hereafter EMT) personnel who had been called to the scene and by police to determine her condition, she refused to be transported to the hospital, asked to call her parents and a family friend who was also a police officer.

2.      Police refused to permit her to contact these adults and instead suddenly and  without probable cause  or any reasonable suspicion of wrongdoing,  grabbed her backpack from behind and violently yanked her  off her bicycle.

3.      She became upset and began to cry while continuing to ask to call her police friend and parents. Police refused and forcibly began to manhandle her to place handcuffs on her. As her alarm grew, Hagerstown city police officers Eichelberger, Rowe, Constable and others unknown became more and more physically abusive.  The girl pleaded with the police officers, who were all white, to call a black officer who knows her family named "Zack."

4.      At one point,  officers each had a hold of her wrist and slung her face first into the side of a brick building. Her chin smashed into a window-sill. This violent action rendered the 105 pound five foot one child even more hysterical and fearful for her safety.

5.      They then handcuffed her hands behind her back and thrust her into the backseat of the police cruiser and then shut the door and unloaded a can of pepper spray into the back seat of the cruiser as she lay there crying, begging and screaming for her parents. In the video, the girl can be heard screaming and crying out that she can't breathe. The girl's father picked her up from the police station and drove her to Meritus Medical Center, where, three hours after she was sprayed, medical staff washed the burning chemicals from her eyes and face. The police contacted the hospital and ordered them not to take any photos of the girl's chemical burns.

6.      This has cost B.N.S. and her family substantial money in both legal and medical costs. This was a deprivation of B.N.S.'s 4th Amendment of the United States Constitution right to be free of unlawful searches and seizure of B.N.S.'s person. There also exists a violation of B.N.S.'s rights under the Fourteenth Amendment of the United States Constitution as the police effected a warrantless arrest of a minor child without probable cause in response to a possible medical emergency. It was a violation of the 24th Article of the Declaration of Rights of the Constitution of the State of Maryland. And it was a violation of B.N.S.'s right of freedom without fear of official reprisal and oppression. It was a false arrest, an abuse of authority with excessive and unnecessary force  and an intentional infliction of emotional distress. These violations have caused B.N.S. pain and suffering and monetary losses.

## PRE-SUIT REQUIREMENTS

7.   B.N.S. has satisfied the prerequisites to suit specified by the Maryland Tort Claims Act, Md. Code Ann., State Gov't (SG) § 12 ,106, and the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. (CJ) § 5-304, for each claim in this complaint to which these laws apply.

8.       B.N.S. sent notice of her claims to  Victor Brito, Chief of Police for the City of Hagerstown,  Bob Bruchey, Mayor for the City of Hagerstown, Hagerstown City Council members and the Maryland State Treasurer by certified mail, return receipt requested, on November 3, 2016.

9.      Undersigned have not received a response from the above parties as of the date of this filing.

**JURISDICTION & VENUE**

10.     This is an action at law under 42 U.S.C. § 1983 and the laws of the State of Maryland to redress the deprivation under color of state law of rights, privileges and immunities secured to the Plaintiff by the Constitutions of the United States and the State of Maryland.

11..    The venue is proper pursuant to 28 U.S.C. § 1391(b), as all of the parties live, or operate, within this district.

12.     All acts necessary or precedent to the bringing of this lawsuit occurred or accrued in Washington County, Maryland. The time provided for in the statute of limitations for filing personal damages has not expired. The aforementioned acts have had significant effects in Maryland.

13.     Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Fourth, and Fourteenth Amendments to the United States Constitution and this jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343(a) (3) and (4).

14.     Plaintiff further invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a) to hear and decide claims arising under State law.

15.     Any State causes of action arising out of the deprivation of the Federal civil rights alleged herein are properly before this Court pursuant to the pendant jurisdiction of this Court.

**INTRADISTRICT ASSIGNMENT**

16.     The entirety of the events complained of herein occurred in Washington  County, Maryland, and this action is properly assigned to the Baltimore Division of the United States District Court for the District of Maryland.

**PARTIES**

17.     Plaintiff B.N.S.,  a 15 year old minor, by her parents  and next friends  Christine and Brian Stuart , is and was at all times relevant herein a resident of Maryland. She is a person within the meaning of the Constitutions of the United States and the state of Maryland.  As explained below, she's been injured and risks further harm as a result of the Defendants illegal acts and omissions.

18.   Defendant Hagerstown City Police Department a Municipal corporation, is a government agency. The Hagerstown City Council, also a government agency, and its members,  Kristin Aleshire, Paul Corderman, Emily Keller, Lewis Metzner, and Donald Munson, hold hearings on police department policy and set the police department budget. They are "persons" within as that term is defined in 42USC 1983. Defendant, Hagerstown City Police Department maintains a police force which operates and administers a set of law enforcement policies, practices and customs involving the hiring, training and supervision of its police officers. The policies, practices and customs include training and supervision in determining probable cause for arrests. As the employer of the officers involved in the subject incident, the Hagerstown  City Police Department is liable for state constitutional violations under the doctrine of respondeat superior.

19.     Victor Brito is the Chief of the Hagerstown Police Department. He is the chief law enforcement officer of the Hagerstown City Police Department and he is appointed by the Mayor of Hagerstown with the advice and consent of the city council. As  police chief, Mr. Brito exercises final policy making authority for the Police Department, establishes the duties conduct and discipline of officers and other employees and establishing policies regarding screening, hiring, training monitoring and supervision of subordinates. He is a person within the meaning of 42 USC 1983, acting at all relevant times under color of state law.  Police chief Brito is sued in his official capacity.

20.  Defendant officers,  Eichelberger, Constable, Rowe and Officers Unknown,  are police officers employed with the Hagerstown City Police Department, they are persons as that term is defined in 42 USC 1983 and at all relevant times  were acting within the scope of employment and under color of Maryland state law and are being sued in both personal and official capacities.

21.     Defendant, City of Hagerstown,  a municipal corporation, maintains law enforcement officers, which operates and administers a set of law enforcement policies, practices and customs involving the hiring, training and supervision of its police officers. The policies, practices and customs include training and supervision in determining probable cause for arrests. As the employer of the officers involved in the subject incident, Hagerstown city is liable for state constitutional violations under the doctrine of respondeat superior. Defendant City of Hagerstown is a person within the meaning of 42 USC 1983, acting at all relevant times under color of state law.

22.  Defendant Mayor Bob Bruchey,  is the chief executive officer of the City of Hagerstown and is responsible for the execution of city policies, laws and resolutions.   He executes the City Council's policies, laws and resolutions.  Mayor Bruchey is a person within the meaning of 42 USC 1983, acting at all times under color of state law.

**GENERAL FACTUAL ALLEGATIONS**

23.     On September 19, 2016, Hagerstown Police Department officers Eichelberger, Rowe, Constable and others unknown, arrived at the scene of an accident  where Hagerstown high school student B.N.S. Stuart, while riding her bicycle in the afternoon, in broad daylight, and entering an intersection, was struck by a motorist and knocked unconscious for a few minutes.

24.     The police report noted that the motorist, Wilson Shearer was not injured and there were no damages to his car. The police report is absent of any information about an investigation into who was at fault for the collision.

25.     B.N.S. was lucid and conversational when EMT personnel arrived and began to question her about her condition.  She  declined to be transported to the hospital and asked to call her parents and a family friend who was also a police officer. Those EMT persons unknown, then left, while police, who had arrived after the EMT, remained at the scene. The video shows the police began to question B.N.S. about where she was going, where she lived, what she'd been doing before she was struck by the car.

26.     As the police questioning intensified,  the police became more physically and verbally aggressive and confrontational while she continued to ask to go home and to call her police friend.

27.     The video shows police refused to permit her to contact her parents or family police friend and instead suddenly and  without probable cause  or any reasonable suspicion of wrongdoing,  grabbed her backpack and violently yanked her  off her bicycle.

28.    The video shows that  once they grabbed her off her bike they never physically let go of her continuing their physical violence and eventually forcing her hands behind her back to cuff her.  She was screaming from the pain she felt when they twisted her arms up and behind her back.

29.    The video shows at one point, two of the officers each had a hold of her wrist and flung her face first into the side of a brick building. Her chin smashed into a window-sill. This violent action rendered the 105 pound five foot one child even more hysterical and fearful for her safety.

30.    The video shows after the officers handcuffed her hands behind her back they forcibly lifted her entire body and thrust her into the backseat of the police cruiser. As she sat there the officers  then pepper sprayed her repeatedly while she cried that she couldn't breathe and begged for her parents. The video shows that they pepper sprayed her four times through the car door, through the open car door window and from within the police car.   The video shows one of the officers climbed into the front seat. He then leaned over the seat directly aiming the pepper spray into her open mouth as she screamed and cried.

31.    During the 15 minutes ride to the police station she couldn't wipe her eyes or mouth.  At the police station they yanked her out of the car and slammed her against  a car.

32.    While she cried for her parents the officers kept threatening her that  if she didn't cooperate with their interrogation, they will take her to Baltimore jail which she knew was 60 miles away.

33.    Approximately 30 minutes after she arrived at the Hagerstown jail, her father Brian arrived but was not  allowed to see his daughter for another 30 minutes.

34.    She was ultimately released to her father whereupon he took her directly to the Meritus Medical Center hospital. Only then were medical personnel able to irrigate her eyes and relieve her pain from the pepper spray.  The medical report notes a diagnosis of multiple contusions, closed head injuries, possible concussion, and whiplash. It also notes she had suffered burning pain in the face, right shoulder and hip pain, neck pain and bilateral eye pain and right lower back pain,  abdominal pain and one episode of vomiting.  The hospital forensic nurse failed to document B.N.S.'s injuries with photographs because, as stated in the medical report,  the Hagerstown police department refused to provide her with a "case number".

35.    The hospital report notes B.N.S. explained that she was struck by the car when she entered the intersection.

**COUNT I: CLAIM OF B.N.S.  AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, A MARYLAND MUNICIPAL CORPORATION, CITY OF HAGERSTOWN , A MARYLAND MUNICIPAL CORPORATION, EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN  FOR VIOLATION OF THE PLAINTIFF'S  CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 ( EXCESSIVE FORCE)**

36.    Plaintiff re-alleges and restates paragraphs 1 through 35 as if fully set forth herein.

37.    One of the officers is heard on video stating that they were "taking her in" because she might have brain damage.  Defendants cannot defend their actions on the grounds that they had reasonable suspicion or probable cause to arrest her for having possible brain damage.  They claim that they sought to detain her to further investigate her health and wellbeing.  She had already declined to be transported by EMT personnel after having spoken with them and therefore EMT left without advising the officers to detain her. Surely it can't be police officer concussion protocol to slam a petite teenager face first against the wall, pepper spray her repeatedly and manhandle her.  Even NFL players get a

time-out if there is a suspicion of a concussion.  The police officers named and unnamed used unreasonable and excessive force when they slammed her like she was in the world wrestling federation.

38.    Force is excessive and therefore violates the Fourth Amendment if it is not reasonable in light of the circumstances facing the officer.  See Graham v Connor , 490 U.S. 386, 397  (1989) ("the 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are "objectively reasonable in light of the facts and circumstances confronting them.")

39.    In Tennessee v. Garner, the Supreme Court held that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). Where a victim of a seizure alleges that officers unreasonably employed excessive force under the circumstances in order to detain or subdue her, the "reasonableness of force should be analyzed in light of such factors as the requirements for the officer's safety, the motivation for the arrest [or detention], and the extent of the injury inflicted." McKenzie v. Lamb, 738 F.2d 1005, 1011 (9th Cir.1984). Hence, an allegation that force used during a personal seizure was excessive as measured by these factors states a claim for relief under section 1983 predicated upon the Fourth Amendment. See Garner, 471 U.S. at 9, 105 S.Ct. at 1700 (use of deadly force to prevent escape constitutes an unreasonable seizure unless the officer has probable cause to believe that the suspect poses a threat of serious harm to the officer or others); Robins, 773 F.2d at 1008-10 (allegation that police used excessive force while transporting plaintiffs to police station after arrest states a section 1983 claim for a Fourth Amendment violation); MacDonald v. Musick, 425 F.2d 373, 377 (9th Cir.) (defendant asserting that his arrest was unlawful, that he had a right to resist, and that he sustained injuries as a result of his resistance stated claim under section 1983), cert. denied, 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90 (1970); see also Gilmere v. City of Atlanta, 774 F.2d 1495, 1502 (11th Cir.1985) (alleged beating and killing of suspect during process of detention stated a section 1983 claim for Fourth Amendment violation), cert. denied, --- U.S. ----, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

40.    In the time immediately leading up and following Plaintiff's arrest, while acting under color of state and local law, Defendants  knowingly deprived Plaintiff of her 4th Amendment rights by their brutal and excessive use of force to detain her.

41.    At the time that Defendants used excessive force to unlawfully seize and search B.N.S., B.N.S. had the Constitutional Right, pursuant to the 4th Amendment to the United States Constitution, to be free from the use of excessive force, false arrest, and unlawful search and seizure. This right was a clearly established right at the time that Plaintiff was unreasonably seized, maced, forcibly physically carried and shoved into the police vehicle while screaming and crying for help.

42.   On September 18, 2016, while acting under color of state and local law, Defendants deprived Plaintiff of her 4th Amendment rights by using excessive force during the course of conducting an unlawful arrest of Plaintiff, by falsely arresting Plaintiff by  transporting her to Washington city police department. And holding her there against her will.

43.    Defendants  violated the clearly established Fourth Amendment rights of the plaintiff to be free from excessive force, false arrest, and unlawful searches and seizures.

44.    As a direct result of the above,  Plaintiff was caused to suffer the following injuries and damages:

(a)    Emotional pain and suffering, including but not limited to stress and anxiety;

(b)     Development of fears and phobias; She burst into tears while in a convenience store when she observed a police officer merely enter the store.

(c)     Nightmares and insomnia;

(d)     humiliation;

(e)     impairment of relationships;

(f)     A substantial loss of the enjoyment of life;

(g)     She missed a week of school and thereafter, when she returned to school she was put on concussion protocol by the school authorities which prevented her from participating in  athletic and certain other school activities.

### COUNT II: CLAIM OF B.N.S.  AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO,  DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, CITY OF HAGERSTOWN, EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN  FOR VIOLATION OF THE PLAINTIFF'S FOURTEEN AMENDMENT RIGHTS (UNLAWFUL SEIZURE)

45     Plaintiff re-alleges and restates paragraphs 1 through 39 as if fully set forth herein.

46.      The fourteenth amendment forbids "any state" to "deprive any person of life, liberty, or property, without due process of law." Shortly after the amendment was adopted, Congress

enacted the Civil Rights Act of 1871, part of which is now 42 U.S.C. § 1983, giving a civil action for redress to any person deprived under color of state law of a right secured by the Constitution or by federal authorities.  Monroe v. Pape   365 U.S. 167 ,3 that section 1983 permitted a damage action against police officers for breaking into a private person's home, beating him and his wife and children, and illegally holding him for ten hours before releasing him and dropping vague charges against him.

47.      In Monroe, the court said, "section [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."

48.      This warrantless search and arrest does not fall under any exceptions to the warrant requirement.

### COUNT III:  CLAIM OF B.N.S. AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO,  DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, CITY OF HAGERSTOWN , EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN FOR VIOLATION OF THE PLAINTIFF'S  CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN FOR VIOLATION OF THE PLAINTIFF'S  CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 ( FALSE ARREST)

49.      Plaintiff re-alleges and restates paragraphs 1 through 43  as if fully set forth herein.

50.      Defendants police officers named and unnamed knew or reasonably should have known that no legitimate grounds existed for the detention and arrest  of B.N.S. and that the she was not suspected of having committed  a crime and thus their actions constitute false arrest

51.      As a result of the false arrest by the aforementioned Defendants, Plaintiff  B.N.S. Stuart experienced severe mental and emotional distress.

**COUNT IV: CLAIM OF B.N.S. AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, CITY OF HAGERSTOWN , EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN  FOR VIOLATION OF THE PLAINTIFF'S  CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

52.     Plaintiff re-alleges and restates paragraphs 1 through 46 as if fully set forth herein.

53.     Defendants intentionally did seize, search and falsely arrest B.N.S.  while committing acts of severe and extreme physical brutality.  Once they  grabbed her off of the bike from behind lifting her bodily up off the bike, they never let go of her body again, they subsequently threatened her with the mace and with taking her to a Baltimore jail.

54.     At one point, after one officer had a handcuff on one wrist while another officer had a handcuff on her other wrist,  they then flung her like a slingshot face first into a brick wall with a protruding cement windowsill.  These actions against her were taken without justification, provocation, or probable cause.

55.     The vile nature of the acts themselves, coupled with the abuse of their power and place in society as police officers as well as the nature of the hostile false arrest makes the above conduct of all Defendants  both extreme and outrageous.

56.     Consequently, B.N.S. began exhibiting signs of severe emotional distress, bursting into tears at the sight of police officers in a public store and other signs of this distress continue to the date of filing this complaint requiring psychological treatment.

57.     This trauma is a direct and proximate result of the intentional behavior of Defendants referenced above.

58.      B.N.S.  has incurred expenses for psychological care and treatment, medicines, and other types of medical and/or psychological related attention. B.N.S. continues to suffer mental and emotional discomfort as a result of the intentional infliction of emotional distress committed by Defendants. This intentional infliction of emotional distress may require lifetime counseling and psychological treatment. All of the above damages were directly and proximately caused by the aforementioned intentional seizure, search, and arrest of B.N.S..

59.     Defendants  conduct meets all the elements to constitute intentional infliction of emotional distress. Defendants conduct was intentional or reckless; their behavior was  extreme and outrageous; their  wrongful conduct was a direct and proximate cause of  B.N.S.'s emotional distress; and her emotional distress was severe. See Harris v. Jones, 281 Md. 560 (1977).

60.     A 1985 case defined "severe emotional distress" as emotional suffering of "such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." See Gallagher v. Bituminous Fire & Marine Ins. Co., 303 Md. 201.

**COUNT V: CLAIM OF B.N.S. PURSUANT TO 28 USC §1983 (MONELL CUSTOM OR PRACTICE) AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, CITY OF HAGERSTOWN, EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN**

61.     B.N.S. re-alleges and restates paragraphs 1 through 55 as if fully set forth herein.   The Mayor of Hagerstown, the Chief of the Hagerstown City Police  and the Hagerstown City Council are responsible for the management, supervision, staffing, funding and training of the Hagerstown Police Department.

62.     The acts of the Defendant Hagerstown City Police Officers constitute a long standing

pervasive pattern of lawlessness and use of excessive force that the Mayor, City Council and  Chief of Police have willfully failed to address.

63.     It is the policy of the Hagerstown City Police Department to inadequately train and supervise its police officers, including the defendant officers and thereby fail to discourage further constitutional violation on the part of its officers and the Mayor, City Council  and the Chief of Police have failed to take any steps to remediate this omission.

64.     As a result of the above described policies and customs, police officers of Hagerstown City Police Department believed their actions would not be investigated or sanctioned, but would be tolerated. The Defendants pepper sprayed B.N.S. needlessly, continuously, excessively repeatedly and even after she was  fully secured for purposes of administering "street discipline."

60.     The above described policies and customs demonstrated a deliberate indifference on the part of policy makers in the Hagerstown City Police Department and in the State of Maryland to the constitutional rights of persons within the County and were the cause of the violation of Plaintiff B.N.S. Stuart's federal and state constitutional rights.


**PRAYER FOR RELIEF**

        WHEREFORE, the Plaintiff, B.N.S. respectfully requests that this Court:

a.     RULES  that the Defendants actions  violated the rights of the Plaintiff, B.N.S.  under the Fourth and Fifth Amendments to the United States Constitution and the laws of the State of Maryland and constitute excessive force, intentional infliction of emotional distress, false arrest and a violation thereof;

b.      ENTER a permanent injunction that bars Defendants from  such abusive conduct against anyone who refuses medical care and from retaliating against Plaintiff B.N.S.  ;

c.      ENTER JUDGMENT awarding Plaintiff B.N.S.  compensatory damages against all Defendants in the amount of $5,000,000.00;

d.    ENTER JUDGMENT awarding Plaintiff B.N.S.   punitive damages against all Defendants and believes she is entitled to punitive damages because defendants conduct was malicious, oppressive, or in reckless disregard of the plaintiff's rights and for the purpose of injuring the Plaintiff.  It reflected complete indifference to the Defendant's safety or rights.

e.  ENTER JUDGMENT  awarding Plaintiff  B.N.S. costs, expenses and reasonable attorneys' fees in this action as provided in 42 US.C. section 1983; and

f.  GRANT the Plaintiff any such relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial in the aforementioned matter.

                                                                                                        Respectfully Submitted,

                                                                                                        _Denise Banjavic_

                                                                                                        Denise J Banjavic

Federal Bar  09816

Robin Ficker
Admission Pending

9601 Baltimore Ave., Ste 205
College Park, Md. 20740

Date Signed: 09/11/2017                    301-919-9068
                                            Fax:  240 597-2299