# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND, BALTIMORE DIVISION

B.N. S.  minor child by her parents and next friends
Christine and Brian Stuart
Plaintiff,

v	CASE NO.  17-CV-2670


Victor Brito,	**AMENDED COMPLAINT 42 U.S.C.**
in his official capacity as police chief of the	**SEC 1983, 4TH, 8TH & 14TH**
Hagerstown Police Department	**MD ART.24   JURY TRIAL**
50 N Burhans Blvd.	**DEMANDED**
Hagerstown, MD 21740

Hagerstown City Police Department, a Maryland Municipal corporation

P.O. Eichelberger (P4918), Sgt. Constable  (P3910),
Officer Rowe (P5190) and
Officers Unknown, in both their personal capacities and their official
capacities as officer of the Hagerstown Police Department
50 N Burhans Blvd.
Hagerstown, MD 21740


Bob Bruchey, in his official capacity as Mayor of the
City of Hagerstown
One E. Franklin St.
Rm 202
Hagerstown, MD 21740

City of Hagerstown, a Maryland Municipal Corporation

Kristin B. Aleshire, Paul Corderman, Emily Keller, Lewis Metzner
and Donald F. Munson in their official capacity as
Council Members for the City Council of Hagerstown
One E. Franklin St.
Rm 202
Hagerstown, MD 21740


Defendants

## COMPLAINT

Now comes the PLAINTIFF B.N.S., a then 15 year old minor, by her parents and next friends Christine and Brian Stuart ("Plaintiff"), who requests a preventive injunction against the Defendants to halt any further deprivations of Liberty or Due Process against the Plaintiff, and who sues the Defendants for money damages and who states:

## SUMMARY OF THE ACTION

1. On September 18, 2016 Hagerstown Police Department arrived at the scene of an accident where Hagerstown high school student B.N.S., while riding her bicycle in the afternoon, in broad daylight, and entering an intersection, was struck by a motorist. After being questioned by Emergency Medical Technicians (hereafter EMT) personnel who had been called to the scene and by police to determine her condition, she refused to be transported to the hospital, asked to call her parents and a family friend who was also a police officer.

2. Police refused to permit her to contact these adults and instead suddenly and without probable cause or any reasonable suspicion of wrongdoing, grabbed her backpack from behind and violently yanked her off her bicycle.

3. She became upset and began to cry while continuing to ask to call her police friend and parents. Police refused and forcibly began to manhandle her to place handcuffs on her. As her alarm grew, Hagerstown city police officers Eichelberger, Rowe, Constable and others unknown became more and more physically abusive. The girl pleaded with the police officers, who were all white, to call a black officer who knows her family named "Zack."

4. At one point, officers each had a hold of her wrist and slung her face first into the side of a brick building. Her chin smashed into a window-sill. This violent action rendered the 105 pound five foot one child even more hysterical and fearful for her safety.

2

5. They then handcuffed her hands behind her back and thrust her into the backseat of the police cruiser and then shut the door and unloaded a can of pepper spray into the back seat of the cruiser as she lay there crying, begging and screaming for her parents. In the video, the girl can be heard screaming and crying out that she can't breathe. The girl's father picked her up from the police station and drove her to Meritus Medical Center, where, three hours after she was sprayed, medical staff washed the burning chemicals from her eyes and face. The police contacted the hospital and ordered them not to take any photos of the girl's chemical burns.

6. This has cost B.N.S. and her family substantial money in both legal and medical costs. This was a deprivation of B.N.S.'s 4th Amendment of the United States Constitution right to be free of unlawful searches and seizure of B.N.S.'s person. There also exists a violation of B.N.S.'s rights under the Fourteenth Amendment of the United States Constitution as the police effected a warrantless arrest of a minor child without probable cause in response to a possible medical emergency. It was a violation of the 24th Article of the Declaration of Rights of the Constitution of the State of Maryland. And it was a violation of B.N.S.'s right of freedom without fear of official reprisal and oppression. It was a false arrest, an abuse of authority with excessive and unnecessary force and an intentional infliction of emotional distress. These violations have caused B.N.S. pain and suffering and monetary losses.

**PRE-SUIT REQUIREMENTS**

7. B.N.S. has satisfied the prerequisites to suit specified by the Maryland Tort Claims Act, Md. Code Ann., State Gov't (SG) § 12 ,106, and the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. (CJ) § 5-304, for each claim in this complaint to which these laws apply.

8. B.N.S. sent notice of her claims to Victor Brito, Chief of Police for the City of Hagerstown, Bob Bruchey, Mayor for the City of Hagerstown, Hagerstown City Council members and the Maryland State Treasurer by certified mail, return receipt requested, on November 3, 2016.

## JURISDICTION & VENUE

10. This is an action at law under 42 U.S.C. § 1983 and the laws of the State of Maryland to redress the deprivation under color of state law of rights, privileges and immunities secured to the Plaintiff by the Constitutions of the United States and the State of Maryland.

11.. The venue is proper pursuant to 28 U.S.C. § 1391(b), as all of the parties live, or operate, within this district.

12. All acts necessary or precedent to the bringing of this lawsuit occurred or accrued in Washington County, Maryland. The time provided for in the statute of limitations for filing personal damages has not expired. The aforementioned acts have had significant effects in Maryland.

13. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Fourth, and Fourteenth Amendments to the United States Constitution and this jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343(a) (3) and (4).

14. Plaintiff further invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a) to hear and decide claims arising under State law.

15. Any State causes of action arising out of the deprivation of the Federal civil rights alleged herein are properly before this Court pursuant to the pendant jurisdiction of this Court.

## INTRADISTRICT ASSIGNMENT

16. The entirety of the events complained of herein occurred in Washington County, Maryland, and this action is properly assigned to the Baltimore Division of the United States District Court for the District of Maryland.

## PARTIES

17. Plaintiff B.N.S., a 15 year old minor, by her parents and next friends Christine and Brian Stuart , is and was at all times relevant herein a resident of Maryland. She is a person within the meaning of the Constitutions of the United States and the state of Maryland. As explained below, she's been injured and risks further harm as a result of the Defendants illegal acts and omissions.

18. Defendant Hagerstown City Police Department a Municipal corporation, is a government agency. The Hagerstown City Council, also a government agency, and its members, Kristin Aleshire, Paul Corderman, Emily Keller, Lewis Metzner, and Donald Munson, hold hearings on police department policy and set the police department budget. They are "persons" within as that term is defined in 42USC 1983. Defendant, Hagerstown City Police Department maintains a police force which operates and administers a set of law enforcement policies, practices and customs involving the hiring, training and supervision of its police officers. The policies, practices and customs include training and supervision in determining probable cause for arrests. As the employer of the officers involved in the subject incident, the Hagerstown City Police Department is liable for state constitutional violations under the doctrine of respondeat superior.

19. Victor Brito is the Chief of the Hagerstown Police Department. He is the chief law enforcement officer of the Hagerstown City Police Department and he is appointed by the Mayor of Hagerstown with the advice and consent of the city council. As police chief, Mr. Brito exercises final policy making authority for the Police Department, establishes the duties conduct and discipline of officers and other employees and establishing policies regarding screening, hiring, training monitoring and supervision of subordinates. He is a person within the meaning of 42 USC 1983, acting at all relevant times under color of state law. Police chief Brito is sued in his official capacity.

20. Defendant officers, Eichelberger, Constable, Rowe and Officers Unknown, are police officers employed with the Hagerstown City Police Department, they are persons as that term is defined in 42 USC 1983 and at all relevant times were acting

5

within the scope of employment and under color of Maryland state law and are being sued in both personal and official capacities.

21. Defendant, City of Hagerstown, a municipal corporation, maintains law enforcement officers, which operates and administers a set of law enforcement policies, practices and customs involving the hiring, training and supervision of its police officers. The policies, practices and customs include training and supervision in determining probable cause for arrests. As the employer of the officers involved in the subject incident, Hagerstown city is liable for state constitutional violations under the doctrine of respondeat superior. Defendant City of Hagerstown is a person within the meaning of 42 USC 1983, acting at all relevant times under color of state law.

22. Defendant Mayor Bob Bruchey, is the chief executive officer of the City of Hagerstown and is responsible for the execution of city policies, laws and resolutions. He executes the City Council's policies, laws and resolutions. Mayor Bruchey is a person within the meaning of 42 USC 1983, acting at all times under color of state law.

## GENERAL FACTUAL ALLEGATIONS

23. On September 18, 2016, Hagerstown Police Department officers Eichelberger, Rowe, Constable and others unknown, arrived at the scene of an accident where Hagerstown high school student B.N.S. Stuart, while riding her bicycle in the afternoon, in broad daylight, and entering an intersection, was struck by a motorist and knocked unconscious for a few minutes.

24. The police report noted that the motorist, Wilson Shearer was not injured and there were no damages to his car. The police report is absent of any information about an investigation into who was at fault for the collision.

25. B.N.S. was lucid and conversational when EMT personnel arrived and began to question her about her condition. She declined to be transported to the hospital and asked to call her parents and a family friend who was also a police officer. Those

6

EMT persons unknown, then left, while police, who had arrived after the EMT, remained at the scene. The video shows the police began to question B.N.S. about where she was going, where she lived, what she'd been doing before she was struck by the car.

26. As the police questioning intensified, the police became more physically and verbally aggressive and confrontational while she continued to ask to go home and to call her police friend.

27. The video shows police refused to permit her to contact her parents or family police friend and instead suddenly and without probable cause or any reasonable suspicion of wrongdoing, grabbed her backpack and violently yanked her off her bicycle.

28. The video shows that once they grabbed her off her bike they never physically let go of her continuing their physical violence and eventually forcing her hands behind her back to cuff her. She was screaming from the pain she felt when they twisted her arms up and behind her back.

29. The video shows at one point, two of the officers each had a hold of her wrist and flung her face first into the side of a brick building. Her chin smashed into a window-sill. This violent action rendered the 105 pound five foot one child even more hysterical and fearful for her safety.

30. The video shows after the officers handcuffed her hands behind her back they forcibly lifted her entire body and thrust her into the backseat of the police cruiser. As she sat there the officers then pepper sprayed her repeatedly while she cried that she couldn't breathe and begged for her parents. The video shows they pepper sprayed her four times through the car door, through the open car door window and from within the police car. The video shows one of the officers climbed into the front seat. He then leaned over the seat directly aiming the pepper spray into her open mouth as she screamed and cried.

31. During the 15 minutes ride to the police station she couldn't wipe her eyes or mouth. At the police station they yanked her out of the car and slammed her against a car.

32. While she cried for her parents the officers kept threatening her that if she didn't cooperate with their interrogation, they will take her to Baltimore jail which she knew was 60 miles away.

33. Approximately 30 minutes after she arrived at the Hagerstown jail, her father Brian arrived but was not allowed to see his daughter for another 30 minutes.

34. She was ultimately released to her father whereupon he took her directly to the Meritus Medical Center hospital. Only then were medical personnel able to irrigate her eyes and relieve her pain from the pepper spray. The medical report notes a diagnosis of multiple contusions, closed head injuries, possible concussion, and whiplash. It also notes she had suffered burning pain in the face, right shoulder and hip pain, neck pain and bilateral eye pain and right lower back pain, abdominal pain and one episode of vomiting. The hospital forensic nurse failed to document B.N.S.'s injuries with photographs because, as stated in the medical report, the Hagerstown police department refused to provide her with a "case number".

35. The hospital report notes B.N.S. explained that she was struck by the car when she entered the intersection.

**COUNT I: CLAIM OF B.N.S. AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, A MARYLAND MUNICIPAL CORPORATION, CITY OF HAGERSTOWN , A MARYLAND MUNICIPAL CORPORATION, EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN FOR VIOLATION OF THE PLAINTIFF'S CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 ( EXCESSIVE FORCE)**

36. Plaintiff re-alleges and restates paragraphs 1 through 35 as if fully set forth herein.

37. One of the officers is heard on video stating that they were "taking her in" because she might have brain damage. Defendants cannot defend their actions on

the grounds that they had reasonable suspicion or probable cause to arrest her for having possible brain damage. They claim that they sought to detain her to further investigate her health and wellbeing. She had already declined to be transported by EMT personnel after having spoken with them and therefore EMT left without advising the officers to detain her. Surely it can't be police officer concussion protocol to slam a petite teenager face first against the wall, pepper spray her repeatedly and manhandle her. Even NFL players get a time-out if there is a suspicion of a concussion. The police officers named and unnamed used unreasonable and excessive force when they slammed her like she was in the world wrestling federation.

38. Force is excessive and therefore violates the Fourth Amendment if it is not reasonable in light of the circumstances facing the officer. See Graham v Connor, 490 U.S. 386, 397 (1989) ("the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable in light of the facts and circumstances confronting them.")

39. In Tennessee v. Garner, the Supreme Court held that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). Where a victim of a seizure alleges that officers unreasonably employed excessive force under the circumstances in order to detain or subdue her, the "reasonableness of force should be analyzed in light of such factors as the requirements for the officer's safety, the motivation for the arrest [or detention], and the extent of the injury inflicted." McKenzie v. Lamb, 738 F.2d 1005, 1011 (9th Cir.1984). Hence, an allegation that force used during a personal seizure was excessive as measured by these factors states a claim for relief under section 1983 predicated upon the Fourth Amendment. See Garner, 471 U.S. at 9, 105 S.Ct. at 1700 (use of deadly force to prevent escape constitutes an unreasonable seizure unless the officer has probable cause to believe that the suspect poses a threat of serious harm to the officer or others); Robins, 773 F.2d at 1008-10 (allegation that police used excessive force while transporting plaintiffs to police station after arrest states a section 1983 claim

for a Fourth Amendment violation); MacDonald v. Musick, 425 F.2d 373, 377 (9th Cir.) (defendant asserting that his arrest was unlawful, that he had a right to resist, and that he sustained injuries as a result of his resistance stated claim under section 1983), cert. denied, 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90 (1970); see also Gilmere v. City of Atlanta, 774 F.2d 1495, 1502 (11th Cir.1985) (alleged beating and killing of suspect during process of detention stated a section 1983 claim for Fourth Amendment violation), cert. denied, --- U.S. ----, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

40. In the time immediately leading up and following Plaintiff's arrest, while acting under color of state and local law, Defendants knowingly deprived Plaintiff of her 4th Amendment rights by their brutal and excessive use of force to detain her.

41. At the time that Defendants used excessive force to unlawfully seize and search B.N.S., B.N.S. had the Constitutional Right, pursuant to the 4th Amendment to the United States Constitution, to be free from the use of excessive force, false arrest, and unlawful search and seizure. This right was a clearly established right at the time that Plaintiff was unreasonably seized, maced, forcibly physically carried and shoved into the police vehicle while screaming and crying for help.

42. On September 18, 2016, while acting under color of state and local law, Defendants deprived Plaintiff of her 4th Amendment rights by using excessive force during the course of conducting an unlawful arrest of Plaintiff, by falsely arresting Plaintiff by transporting her to Washington city police department. And holding her there against her will.

43. Defendants violated the clearly established Fourth Amendment rights of the plaintiff to be free from excessive force, false arrest, and unlawful searches and seizures.

44. As a direct result of the above, Plaintiff was caused to suffer the following injuries and damages:

(a) Emotional pain and suffering, including but not limited to stress and anxiety;

(b)     Development of fears and phobias; She burst into tears while in a convenience store when she observed a police officer merely enter the store.

(c)     Nightmares and insomnia;

(d)     humiliation;

(e)     impairment of relationships;

(f)     A substantial loss of the enjoyment of life;

(g)     She missed a week of school and thereafter, when she returned to school she was put on concussion protocol by the school authorities which prevented her from participating in athletic and certain other school activities.

### COUNT II: CLAIM OF B.N.S. AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, CITY OF HAGERSTOWN, EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN FOR VIOLATION OF THE PLAINTIFF'S FOURTEEN AMENDMENT RIGHTS (UNLAWFUL SEIZURE)

45    Plaintiff re-alleges and restates paragraphs 1 through 39 as if fully set forth herein.

46.    The fourteenth amendment forbids "any state" to "deprive any person of life, liberty, or property, without due process of law." Shortly after the amendment was adopted, Congress

enacted the Civil Rights Act of 1871, part of which is now 42 U.S.C. § 1983, giving a civil action for redress to any person deprived under color of state law of a right secured by the Constitution or by federal authorities. Monroe v. Pape 365 U.S. 167 ,3 that section 1983 permitted a damage action against police officers for breaking into a private person's home, beating him and his wife and children, and illegally holding him for ten hours before releasing him and dropping vague charges against him.

47. In Monroe, the court said, "section [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."

48. This warrantless search and arrest does not fall under any exceptions to the warrant requirement.

**COUNT III: CLAIM OF B.N.S. AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, CITY OF HAGERSTOWN , EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN FOR VIOLATION OF THE PLAINTIFF'S CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN FOR VIOLATION OF THE PLAINTIFF'S CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 ( FALSE ARREST)**

49. Plaintiff re-alleges and restates paragraphs 1 through 43 as if fully set forth herein.

50. Defendants police officers named and unnamed knew or reasonably should have known that no legitimate grounds existed for the detention and arrest of B.N.S. and that the she was not suspected of having committed a crime and thus their actions constitute false arrest

51. As a result of the false arrest by the aforementioned Defendants, Plaintiff B.N.S. Stuart experienced severe mental and emotional distress.

**COUNT IV: CLAIM OF B.N.S. AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, CITY OF HAGERSTOWN , EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN FOR VIOLATION OF THE PLAINTIFF'S CIVIL RIGHTS PURSUANT TO 42 U.S.C. 1983 (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

52. Plaintiff re-alleges and restates paragraphs 1 through 46 as if fully set forth herein.

53. Defendants intentionally did seize, search and falsely arrest B.N.S. while committing acts of severe and extreme physical brutality. Once they grabbed her

off of the bike from behind lifting her bodily up off the bike, they never let go of her body again, they subsequently threatened her with the mace and with taking her to a Baltimore jail.

54. At one point, after one officer had a handcuff on one wrist while another officer had a handcuff on her other wrist, they then flung her like a slingshot face first into a brick wall with a protruding cement windowsill. These actions against her were taken without justification, provocation, or probable cause.

55. The vile nature of the acts themselves, coupled with the abuse of their power and place in society as police officers as well as the nature of the hostile false arrest makes the above conduct of all Defendants both extreme and outrageous.

56. Consequently, B.N.S. began exhibiting signs of severe emotional distress, bursting into tears at the sight of police officers in a public store and other signs of this distress continue to the date of filing this complaint requiring psychological treatment.

57. This trauma is a direct and proximate result of the intentional behavior of Defendants referenced above.

58. B.N.S. has incurred expenses for psychological care and treatment, medicines, and other types of medical and/or psychological related attention. B.N.S. continues to suffer mental and emotional discomfort as a result of the intentional infliction of emotional distress committed by Defendants. This intentional infliction of emotional distress may require lifetime counseling and psychological treatment. All of the above damages were directly and proximately caused by the aforementioned intentional seizure, search, and arrest of B.N.S..

59. Defendants conduct meets all the elements to constitute intentional infliction of emotional distress. Defendants conduct was intentional or reckless; their behavior was extreme and outrageous; their wrongful conduct was a direct and proximate cause of B.N.S.'s emotional distress; and her emotional distress was severe. See Harris v. Jones, 281 Md. 560 (1977).

60. A 1985 case defined "severe emotional distress" as emotional suffering of "such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." See Gallagher v. Bituminous Fire & Marine Ins. Co., 303 Md. 201.

## COUNT V: CLAIM OF B.N.S. PURSUANT TO 28 USC §1983 (MONELL CUSTOM OR PRACTICE) AGAINST DEFENDANTS MAYOR, CITY COUNCIL, CHIEF BRITO, DEFENDANT HAGERSTOWN CITY POLICE DEPARTMENT, CITY OF HAGERSTOWN, EICHELBERGER, CONSTABLE, ROWE AND OFFICERS UNKNOWN

61. B.N.S. re-alleges and restates paragraphs 1 through 55 as if fully set forth herein. The Mayor of Hagerstown, the Chief of the Hagerstown City Police and the Hagerstown City Council are responsible for the management, supervision, staffing, funding and training of the Hagerstown Police Department.

62. The acts of the Defendant Hagerstown City Police Officers constitute a long standing pervasive pattern of lawlessness and use of excessive force that the Mayor, City Council and Chief of Police have willfully failed to address.

63. It is the policy of the Hagerstown City Police Department to inadequately train and supervise its police officers, including the defendant officers and thereby fail to discourage further constitutional violation on the part of its officers and the Mayor, City Council and the Chief of Police have failed to take any steps to remediate this omission.

64. As a result of the above described policies and customs, police officers of Hagerstown City Police Department believed their actions would not be investigated or sanctioned, but would be tolerated. The Defendants pepper sprayed B.N.S. needlessly, continuously, excessively repeatedly and even after she was fully secured for purposes of administering "street discipline."

60. The above described policies and customs demonstrated a deliberate indifference on the part of policy makers in the Hagerstown City Police Department and in the State of Maryland to the constitutional rights of persons within the County

and were the cause of the violation of Plaintiff B.N.S. Stuart's federal and state constitutional rights.

## COUNT VI-- 8TH AMENDMENT EXCESSIVE FORCE

61. Plaintiff B.N.S. alleges as if fully set forth the allegations of Paragraphs 1 through 35 of this complaint.

62. In a very important Supreme Court case called Hudson v. McMillian, 503 U.S. 1 (1992), the Court found a violation of the Eighth Amendment when prison officials punched and kicked a prisoner, leaving him with minor bruises, swelling of his face and mouth, and loose teeth. The Court held that a guard's use of force violates the Eighth Amendment when it is not applied "in a good faith effort to maintain or restore discipline" but instead is used to "maliciously and sadistically cause harm." "Excessive force" is any physical contact by a guard that is meant to cause harm, rather than keep order.

63. Defendant Police Department herein was negligent in its failure to properly train Defendant Police Officers in policies and procedures which would have prevented Officers known and unknown from committing an assault On Plaintiff B.N.S., specifically, Defendant Police Officers should have been trained to seek to take other precautions for young and emotionally fragile persons who were not attempting to escape or bring harm to themselves or others but who were merely refusing to obey a command to call their mother or other parent, prior to a resort to brutal and excessive force, and said negligent failure to properly train these Defendant Police Officers caused them to breach their duty of care owed to B.N.S.

64. The Eighth Amendment, protects prisoners from "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). An Eighth Amendment claim for excessive force, like Boone's claim, requires the prisoner to prove the official possessed a culpable state of mind (subjective component) and caused the prisoner a sufficiently serious deprivation or injury (objective component). Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

65. The subjective component requires a prisoner to prove the official acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Whitley, 475 U.S. at 320-21 (internal quotation marks omitted).

66. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Factors showing malicious or sadistic intent include:

(1) the need for force,

(2) the degree of force used in relation to the need for force,

(3) the existence of a threat reasonably perceived by the official,

(4) any efforts made to lessen the severity of a forceful response, and

(5) the extent of the prisoner's injury.

Id. at 7.

67. The objective component measures the force used against "contemporary standards of decency." Hudson, 503 U.S. at 8 (internal quotations omitted). There was no need for the immediate, brutal and extreme measure of force used by the police when they suddenly yanked her off her bike and continued uninterrupted for the next ten to fifteen minutes to assault her as they tried to abuse and frighten her into calling her mother or father. Both officers physically and forcefully began to yank and shove B.N.S. around immediately forcing her to be handcuffed shoving her to the ground and holding her there despite her cries that she was not trying to escape and that she suffered from OCD. They subsequently then slammed her into a brick wall without any showing of a perceived threat from her or of harm to them, herself or others. She was in fact, merely not acceding to their demand that she call her mother or father because, at one point, she told them her mother would be mad at her.

68. Having immediately resorted to excessive force, these officers made no attempt to lessen the severity of their assault but instead held her, handcuffed on the concrete sidewalk while she exhibited clear signs of a panic attack and cried. They then decided to remove

her from the scene and two of them carried her cuffed and panic stricken to the police car while she cried and screamed in fear writhing in their grasp. They placed and secured her in the back of a police vehicle, then gratuitously pepper sprayed her multiple times while she was looking for her phone to call her mother and despite her being seatbeted in and handcuffed with the police car door partially shut.

69. Having secured her in the police vehicle, despite her cry that she would call her mother if she could just find her phone, they gratuitously spray her with pepper spray as she sat seat-belted in the car and looked about for her phone on the seat behind and next to her. This was clearly a retaliatory gesture meant to satisfy their anger over her earlier refusal to call her parents. Just prior to pepper spraying her, one officer is heard casually telling another officer to step away and he will "just spray her". When she is sprayed multiple times, Plaintiff is not trying to escape nor posing a threat to herself or others, but is secured in the back seat of the patrol car handcuffed and seatbelted. During the ride to the police station and while there for about 45 minutes, she was given no opportunity to waste the pepper spray from her eyes and face. The police officers who rode in the fumigated car did wash their face and eyes immediately upon arriving at the police station even though they were not the recipients of any direct pepper spray but rather secondary spray. It was hours later that she had her eyes and face medically washed at the hospital.

70. By shoving B.N.S. to the ground and pushing and slamming B.N.S. into a wall, then carrying her to the police vehicle and forcefully shoving her body in the back seat and then while completely restrained and not attempting escape nor posing a threat to herself or others, pepper spraying her multiple times without sufficient provocation, Defendant Police Officers willfully, wantonly and maliciously acted for the purpose of causing an injury to B.N.S, without justification or excuse.

71. Only when Plaintiff was released to her parents was she then taken to the Meritus Medical Center and following a series of diagnostic procedures she was placed in a cervical collar for her mild right thrombotic thrombocytopenic purpura and treated with pain medication

72. As a direct and proximate result of one or more of Defendant Police Officers' wrongful acts, cruel and unusual punishment, B.N.S. sustained serious bodily and emotional injuries.

WHEREFORE, Plaintiff B.N.S demands judgment against Defendant Police Department for Five Hundred Thousand ($5,000.00) in compensatory damages, plus interest and costs.

**COUNT VII- VIOLATION OF MARYLAND DECLARATION OF RIGHTS, ARTICLE 24**

73. Plaintiff B.N.S. re-alleges as if fully set forth the allegations of Paragraphs 1 through 46 of this complaint.

74. Article 24 of the Maryland Declaration of Rights provides that "no man ought to be... deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land."

78. Defendant Police Department breached its duty of care owed to B.N.S. under Article 24 of the Maryland Declaration of Rights by causing injury to her without the judgment of her peers, or by the law of the land.

79. As a direct and proximate result of Defendant Officers actions, whereby they inflicted injury to Plaintiff without due process, they violated Article 24 of the Maryland Declaration of Rights.

80. By Defendant Police Department's failure to properly train Defendant Police Officers as set forth in Paragraphs 1 through 46 above, Defendant Police Department breached its duty of care owed to B.N.S. under Article 24 of the Maryland Declaration of Rights by causing injury to her without the judgment of her peers, or by the law of the land.

81. As a direct and proximate result of Defendant Police Department's negligent failure under Article 24 of the Maryland Declaration of Rights in causing the injury to B.N.S., she sustained mental anguish, emotional pain, suffering, loss of protection, loss of paternal care, loss of filial care, loss of attention, loss of advice and loss of counsel.

WHEREFORE, Plaintiff B.N.S. demands any damages allowed by law against Defendant Police Department, including an admission of responsibility for the assault and battery of B.N.S.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, B.N.S. respectfully requests that this Court:

a. RULES that the Defendants actions violated the rights of the Plaintiff, B.N.S. under the Fourth and Fifth Amendments to the United States Constitution and the laws of the State of Maryland and constitute excessive force, intentional infliction of emotional distress, false arrest and a violation thereof;

b. ENTER a permanent injunction that bars Defendants from such abusive conduct against anyone who refuses medical care and from retaliating against Plaintiff B.N.S. ;

c. ENTER JUDGMENT awarding Plaintiff B.N.S. compensatory damages against all Defendants in the amount of $5,000,000.00;

d. ENTER JUDGMENT awarding Plaintiff B.N.S. punitive damages against all Defendants and believes she is entitled to punitive damages because defendants conduct was malicious, oppressive, or in reckless disregard of the plaintiff's rights and for the purpose of injuring the Plaintiff. It reflected complete indifference to the Defendant's safety or rights.

e. ENTER JUDGMENT awarding Plaintiff B.N.S. costs, expenses and reasonable attorneys' fees in this action as provided in 42 US.C. section 1983; and

f. GRANT the Plaintiff any such relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial in the aforementioned matter.

Respectfully submitted,

_____
Denise J. Banjavic
9601 Baltimore Ave., Ste 204
College Park, MD 20740
Attorney for Plaintiff B.N.S.

CERTIFICATE OF SERVICE

I HERERBY CERTIFY that on this 12Th day of March, 2018, a copy of the foregoing Motion to Amend Complaint and Memorandum was filed electronically and served electronically upon counsel of record.

_____
Denise J. Banjavic