**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>B.N.S. minor child by her parents</td><td>*</td><td></td></tr>
<tr><td>and next friends Christine and Brian Stuart</td><td>*</td><td></td></tr>
<tr><td>Plaintiff</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Civil Case No. ELH-17-2670</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>VICTOR BRITO, et al.</td><td>*</td><td></td></tr>
<tr><td>Defendants</td><td>*</td><td></td></tr>
<tr><td></td><td>*********</td><td></td></tr>
</table>

**MEMORANDUM OPINION**

Plaintiff B.N.S., a minor child, by her parents and next friends, Christine and Brian Stuart, has filed a civil rights suit against multiple defendants. In an Amended Complaint (ECF 32), filed with exhibits (ECF 34), B.N.S. sued Victor Britto, in his official capacity as Police Chief of the Hagerstown Police Department; the Hagerstown City Police Department ("Department"), a municipal corporation; Police Officer Andrew Eichelberger, Sergeant Casey Constable, and Police Officer Zachary Rowe, and unknown officers, in their personal and official capacities; Bob Bruchey, in his official capacity as Mayor of the City of Hagerstown; the City of Hagerstown, a Maryland municipal corporation (the "City"); and five members of the City Council of Hagerstown, in their official capacities: Kristin Aleshire, Paul Corderman, Emily Keller, Lewis Metzner, and Donald Munson.

The suit is rooted in events that occurred on September 18, 2016, when B.N.S., then a 15-year-old riding a bicycle, was involved in a motor vehicle accident in Hagerstown. ECF 32, ¶ 23; ECF 42 at 3. Plaintiff alleges that police officers employed by the Hagerstown Police Department arrived at the scene and used excessive and violent force against B.N.S., handcuffed

her, arrested her, and unlawfully detained her. ECF 32, ¶¶ 1-6, ¶¶ 23-35. Portions of the incident were captured on video. *See* ECF 34-1; ECF 40.

The Amended Complaint contains seven counts. Count I asserts a claim against all defendants, alleging the use of excessive force, in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983. Count II lodges a claim against all defendants for unlawful seizure, in violation of the Fourteenth Amendment. Count III alleges a claim against all defendants for false arrest, pursuant to 42 U.S.C. § 1983. In Count IV, plaintiff asserts a claim against all defendants for intentional infliction of emotional distress, under 42 U.S.C. § 1983. Count V is lodged against all defendants, citing "28 USC 1983 (Monell custom or practice)." In Count VI, plaintiff asserts a claim, apparently against "Defendant Police Department" (*see* ¶ 63), for the use of excessive force, in violation of the 8th Amendment. Count VII contains a claim, apparently against the Police Department (¶ 78), for "Violation of Maryland Declaration of Rights, Article 24." Plaintiff seeks compensatory and punitive damages.

Defendants have filed a pre-discovery motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF 37. It is supported by a memorandum (ECF 37-2) (collectively, the "Motion") and multiple exhibits. *See* ECF 38; ECF 40; ECF 46. B.N.S. opposes the Motion (ECF 42) with a Memorandum (ECF 42-1) (collectively, "Opposition"), and has submitted plaintiff's affidavit. ECF 45. Defendants replied (ECF 44, "Reply") and submitted additional exhibits. *See* ECF 46; ECF 49. Plaintiff filed a surreply, without leave of court. *See* ECF 47. *See* Local Rule 105.2(a).

No hearing is necessary to resolve the Motion. *See* Local Rule 105(6). I shall construe the Motion as one to dismiss. And, for the reasons that follow, I shall grant the Motion in part and deny it in part.

# I.    Factual Background[1]

On September 18, 2016, officers from the Hagerstown City Police Department arrived at the scene of an accident involving B.N.S., a minor child who had been riding her bicycle, and a motor vehicle. ECF 32, ¶ 1.  B.N.S. alleges that she was "struck by a motorist and knocked unconscious for a few minutes" as a result of the incident.  *Id.* ¶ 23.  Emergency medical personnel arrived at the scene, but B.N.S. refused transport to the hospital.  *Id.* ¶¶ 1, 25.

Police officers, including P.O. Andrew Eichelberger, Sergeant Casey Constable, and P.O. Zachary Rowe, arrived at the scene, and two of the officers were operating body cameras.  ECF 34-1; ECF 38-3, ¶ 10, ECF 38-5, ¶ 8; ECF 42-1 at 3.  B.N.S. alleges that "[t]he video shows police refused to permit [B.N.S.] to contact her parents or family police friend."  ECF 32, ¶ 27. According to B.N.S., when she tried to get back onto her bicycle, the officers forcibly "yanked" her from it (ECF 32, ¶ 27) and detained her.  *Id.* at 28. Eventually, B.N.S. was placed under arrest, handcuffed, and placed into the police cruiser.  ECF 32, ¶¶ 28-30; ECF 34-1, ECF 38-3, ECF 38-5. While B.N.S. was in the police cruiser, the officers used pepper spray at least one time.  *Id.*; ECF 32, ¶ 30. Eventually, B.N.S. was transported to the Hagerstown jail and subsequently released to the custody of a parent.  ECF 32, ¶¶ 31, 33-34.[2]

Plaintiff claims that she suffered bilateral eye injuries from the use of pepper spray, multiple contusions, whiplash, abdominal pain, and other injuries.  *Id.* ¶ 34.  She seeks compensatory and punitive damages.  ECF 32 at 19.

---

[1] The Factual Background is derived largely from the allegations in the Complaint and any exhibits integral to the Complaint.

[2] The defendants note that B.N.S. was charged as a juvenile with disorderly conduct, second degree assault, and possession of marijuana.  ECF 37-2 at 10; ECF 37-13; ECF 38-6. The status of the charges was not addressed.

## II.    Legal Standards

### A.

As noted, defendant has moved to dismiss or, in the alternative, for summary judgment. ECF 37. A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court has discretion to consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But when, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Alan Wright & Arthur Miller et al., Federal Practice & Procedure § 1366 (3d ed.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous

material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

Summary judgment is usually inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. Appx. 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLP*, 616 Fed. Appx. 552, 561 (4th Cir. 2015). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at her peril, because "'the failure to file an affidavit ... is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 Fed. Appx. at 561. But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961). According to the Fourth Circuit, the failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature [sic] and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (quoting *First Chicago Int'l v. United Exchange Co., Ltd.*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988)).

Plaintiff does not make clear her position as to the Motion, and she addresses both legal standards. ECF 42-1 at 3-8. Moreover, she identifies facts in dispute, pertinent to a summary judgment motion. *Id.* at 3-8. Moreover, no Rule 56(d) affidavit was ever submitted by plaintiff.

On summary judgment, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Where there is conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

In effect, were I to construe the Motion as one for summary judgment, I would be asked to resolve disputes of fact – a function that is the province of the fact-finder. Moreover, in *McCray v. Md. Dept. of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014), the Fourth Circuit said: "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC v. City of Salisbury, Md.*, 672 F. App'x 220, 222 (4th Cir. 2016) (per curiam) (quoting *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)).

Accordingly, in light of the posture of the case, I decline to convert the Motion to one for summary judgment. Instead, I shall construe it as one to dismiss, under Rule 12(b)(6).

**B.**

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions

drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

With respect to a motion to dismiss under Rule 12(b)(6), courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'"* *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so

long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

But, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

## C.

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, ___ U.S. ___, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity

as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." (Citations and internal quotation marks omitted)).

Section 1983 also requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Thus, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials in § 1983 claims "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

With these principles in mind, I turn to address the multiple claims lodged against the

various defendants. The discussion of the claims does not correspond to the order of the counts in the Amended Complaint.

### III. Discussion

### A.     Claims Against Individual Defendants in their Official Capacities

Plaintiff has sued Victor Brito, the Hagerstown police chief; Bob Bruchey, the Mayor of Hagerstown; and five individual City Council Members: Kristin B. Aleshire, Paul Corderman, Emily Keller, Lewis Metzner, and Donald F. Munson, all in their official capacities. ECF 32. She has also sued the individual officer defendants, P.O Eichelberger, Sgt. Constable, Officer Rowe, and unknown officer defendants, "in both their personal capacities and their official capacities." *Id.* Because "the government entity has received an opportunity to respond to a suit filed against one of its agents in his or her official capacity, the suit is in all respects, other than name, a suit against the entity." *Vincent v. Prince George's Cnty.*, *Md.*; 157 F.Supp. 2d 588, 595 (D. Md. 2001); *see also Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

Moreover, a review of the Amended Complaint makes clear that plaintiff has not asserted any facts to support a suit against the five City Council members. Indeed, no plausible claim has been lodged against any of them. Thus, the suit as to them fails for noncompliance with the notice-pleading requirements of Rule 8(a) and with the Supreme Court's admonition that a complaint must contain more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," but must instead contain sufficient factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Accordingly, because plaintiff has not set forth any facts to warrant a suit against the City Council Members, I shall dismiss plaintiff's claims against defendants Aleshire, Corderman, Keller, Metzner, and Munson, in their official and individual capacities. And, because plaintiff has also sued the City of Hagerstown, I shall dismiss the suit against Brito and Bruchey, as well as Eichelberger, Constable, and Rowe, in their official capacities.

**B.        Count VI:  Defendant Hagerstown Police Department**

Count VI alleges a violation of the Eighth Amendment, lodged against the Hagerstown Police Department. *See* ECF 32 at 18. Defendants contend that plaintiff's claims against the "Hagerstown City Police Department" or "Defendant Police Department" must be dismissed because the Department is not an entity subject to suit.

I turn first to the nature of the claim. An Eighth Amendment claim is not cognizable here. This is because, at the relevant time, B.N.S. had not been convicted of a crime, and therefore the Eighth Amendment does not apply. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (noting that the Eighth Amendment applies only after the state "'has secured a formal adjudication of guilt in accordance with due process of law'") (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n. 40 (1977)).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). Notably, it protects the rights of *postconviction* detainees. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process

of law.'") (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)).

In contrast, the Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees. Pretrial detainees "retain at least those constitutional rights [held] by convicted prisoners." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979); *see also Patten v. Nichols,* 274 F.3d 829, 834 (4th Cir. 2001). But, because plaintiff was not in postconviction status, she has no Eighth Amendment claim.

With regard to the suit against the Department, the capacity of an entity to sue or be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). A county police department is an agent of the State or county, and not a separate legal entity. *See LaPier v. Prince George's Cnty., Md.*, No. 10–CV–2851 AW, 2011 WL 4501372, at *3 (D. Md. Sept. 27, 2011) (citing cases); *Hines v. French*, 157 Md. App. 536, 573, 852 A.2d 1047, 1069 (2004). Given that the City of Hagerstown is named as a defendant in this case, I will dismiss plaintiff's claim in Count VI against the Department.

### C.      Count II: Fourteenth Amendment (Due Process)

In Count II, plaintiff alleges what appears to be a claim against all defendants, pursuant to 42 U.S.C. § 1983, for "violation of the Plaintiff's Fourteen [sic] Amendment Rights (Unlawful Seizure)." ECF 32 at 11. In the Opposition, plaintiff concedes that "B.N.S.'s claims under 42 U.S.C. § 1983 must be analyzed under the Fourth Amendment's objective reasonableness standard and not the Fourteenth Amendment's due process standard." ECF 42-1 at 13.

In light of plaintiff's concession, and because plaintiff has alleged a viable Fourth Amendment claim in other counts, I shall dismiss Count II.

### D.      Count VII: Article 24 – Hagerstown Police Department

Count VII, lodged against the Hagerstown Police Department, alleges that the

Department violated Article 24 of the Maryland Declaration of Rights. Article 24 provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

Article 24 contains the State's constitutional guarantee of due process and equal protection of the law. *Town of Easton v. Pub. Serv. Comm'n,* 379 Md. 21, 41 n.11, 838 A.2d 1225, 1237 n.11 (2003). It "is the state law equivalent of the Fourteenth Amendment of the United States." *Hawkins v. Leggett,* 955 F. Supp. 2d 474 (D. Md. 2013) (quotation marks omitted). Thus, Article 24 is ordinarily interpreted *in pari materia* with its federal counterpart. *See Tyler v. City of College Park,* 415 Md. 475, 499-500, 3 A.3d 421, 435 (2010) (recognizing that Maryland courts "interpret Article 24 *in pari materia* with the Fourteenth Amendment to the United States Constitution."); *see also Littleton v. Swonger*, 502 F. App'x 271, 274 (4th Cir. 2012) (stating that Article 24 is "construed *in pari materia* with the . . . Fourteenth Amendment[]"); *Meyers v. Balt. Cty.*, 981 F. Supp. 2d 422, 430 (D. Md. 2013); *Dent v. Montgomery Cty. Police Dept.*, 745 F. Supp. 2d 648, 661 (D. Md. 2010); *Doe v. Dept. of Pub. Safety & Corr. Servs.*, 185 Md. App. 625, 636, 971 A.2d 975, 982 (2009).

In other words, Article 24 "has been interpreted to apply 'in like manner and to the same extent as the Fourteenth Amendment of the Federal Constitution,' so that 'decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities.'" *Frey v. Comptroller of Treasury,* 422 Md. 111, 176, 29 A.3d 475, 513 (2011) (quoting *Attorney Gen. of Md. v. Waldron,* 289 Md. 683, 704, 426 A.2d 929, 941 (1981)). "Therefore, the analysis under Article 24 is, for all intents and purposes, duplicative of the analysis under the Fourteenth Amendment." *Hawkins,* 955 F. Supp. 2d 474.

The defense contends that Article 24 does not apply. It observes, correctly, that Article 26 of the Maryland Declaration of Rights is the Maryland equivalent to the Fourth Amendment. *See*, *e.g.*, *Ross v. Early*, 899 F. Supp. 2d 415, 431 (D. Md. 2012); *Padilla v. State*, 180 Md. App. 210, 226, 949 A.2d 68, 78, *cert. denied*, 405 Md. 507, 954 A.2d 468 (2008).

In light of plaintiff's concession as to the due process claim under the Fourteenth Amendment, and my disposition as to that claim, I shall dismiss the corollary claim under Article 24, without prejudice to plaintiff's right to file a claim under Article 26 of the Maryland Declaration of Rights. [3]

### E.    Count IV:  Intentional Infliction of Emotional Distress

In Count IV, plaintiff asserts a claim against all defendants for intentional infliction of emotional distress ("IIED"). Although plaintiff cites 42 U.S.C. § 1983 in the caption, the claim appears to be based on Maryland law. *See* ECF 32, ¶ 59 (citing the elements of the State cause of action).

Generally speaking, claims for IIED are disfavored, difficult to establish and, as such, "rarely viable." *Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F.Supp. 2d 751, 757 (D. Md. 2011); *see generally Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514, 665 A.2d 297, 319 (1995) (stating that the tort of intentional infliction of emotional distress is "difficult to satisfy"), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996).

---

[3] Qualified immunity, discussed *infra*, is not a defense to a claim brought under Article 24 of the Maryland Declaration of Rights. *See Littleton*, 502 F. App'x at 274 & n.2 (citing *Okwa v. Harper*, 360 Md. 161, 757 A.2d 118, 140 (2000)); *see also Wallace v. Poulos*, DKC-8-261, 2009 WL 3216622, at *15 (D. Md. Sept. 29, 2009) (qualified immunity is not a defense to an Article 24 claim). Unlike a federal constitutional claim, a Maryland constitutional claim under Article 24 is not subject to an analysis that considers whether the right in question "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant*, 677 F.3d at 662 (citation omitted). Instead, a court may consider potentially applicable state law immunities, if raised as defenses.

In order to prevail on a claim for IIED in Maryland, a plaintiff must show that (1) the defendants' conduct was intentional or reckless; (2) their conduct was extreme and outrageous; (3) there was a causal connection between the defendants' wrongful conduct and the emotional distress suffered; and (4) the emotional distress was severe. *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977); *accord, e.g., Caldor, Inc. v. Bowden*, 330 Md. 632, 641-42, 625 A.2d 959, 963 (1993); *Mixter v. Farmer,* 215 Md. App. 536, 548, 81 A.3d 631, 637 (2013); *Lasater v. Guttmann*, 194 Md. App. 431, 448, 5 A.3d 79, 89 (2010); *see also Veney v. Prince George's Cty.*, No. 1313, Sept. Term 2016, 2018 WL 1778644, at *6 (Md. Ct. Spec. App. Apr. 13, 2018).

The defendant's conduct must be "'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Arsham v. Mayor & City Council of Baltimore*, 85 F. Supp. 3d 841, 850 (D. Md. 2015) (quoting *Harris*, 281 Md. at 567, 380 A.2d at 614).  Indeed, "[t]o be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59-60, 502 A.2d 1057, 1064, *cert. denied*, 306 Md. 118, 507 A.2d 631 (1986)), *aff'd*, 166 F.3d 1208 (4th Cir. 1998). Moreover, since the Maryland Court of Appeals first recognized the tort of IIED in 1977, *Harris,* 281 Md. 560, 380 A.2d 611, it has repeatedly advised that "recovery" for IIED "will be meted out sparingly[.]" *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 75 (1991); *see Batson v. Shiflett*, 325 Md. 684, 733, 602 A.2d 1191, 1216 (1992); *Caldor, Inc.*, 330 Md. at 642, 625 A.2d at 963.

A showing of "severe" emotional distress requires a plaintiff to "plead specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Chin v. Wilhelm,*

Civil No. CCB-02-01551, 2006 WL 827343, at *9 (D. Md. Mar. 24, 2006) (citing *Manikhi v. Mass Trans. Admin.*, 360 Md. 333, 367, 758 A.2d 95, 113 (2000)). To survive a motion to dismiss, the facts alleged must give rise to the inference that the plaintiff experienced "severely disabling emotional trauma," *Chin*, 2006 WL 827343, at *9, *i.e.* that she was rendered "'unable to function'" or "'unable to attend to necessary matters.'" *Pemberton v. Bethlehem Steel Corp.*, 66 Md. App. 133, 161, 502 A.2d 1101, 1115 (1986) (quoting *Hamilton*, 66 Md. App. at 59, 502 A.2d at 1064).

This standard is very difficult to meet. In *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007), for example, the court dismissed plaintiff's IIED claim for failure sufficiently to allege severe distress, even though plaintiff had alleged "severe depression, anxiety, sleeplessness, headaches and [being] sick to her stomach." The court determined that the severity "threshold is reached when a plaintiff's 'emotional distress is so severe as to have disrupted her ability to function on a daily basis.'" *Id.* (quoting *Bryant v. Better Bus. Bureau of Greater Md.*, 923 F. Supp. 720, 750 (D. Md. 1996)). Because the plaintiff in *Takacs* did not "allege that she has been unable to function on a daily basis," the court dismissed her claim. 473 F. Supp. 2d at 652.

Likewise, in *Manikhi*, 360 Md. at 370, 758 A.2d at 115, *supra*, the Maryland Court of Appeals affirmed dismissal of an IIED claim where the plaintiff alleged she was forced to seek medical treatment as a result of her emotional distress, but she did not state, "for example," "whether the medical treatment that she was forced to seek was of a psychological or physical nature, how long the treatment lasted, whether it was successful or is still continuing, whether it was periodic or intensive, and so forth." Without such information, the court agreed that the

plaintiff had failed to "state with reasonable certainty the nature, intensity or duration of the alleged emotional injury." *Id.*

The allegations in plaintiff's Amended Complaint fail to meet the high bar described in the case law. Plaintiff alleges, ECF 32, ¶¶ 56, 58, that after the incident with the officers, she

> began exhibiting signs of severe emotional distress, bursting into tears at the sight of police officers in a public store and other signs of this distress continue to the date of filing this complaint requiring psychological treatment . . . BNS has incurred expenses for psychological care and treatment, medicines, and other types of medical and/or psychological related attention. B.N.S. continues to suffer mental and emotional discomfort as a result of the intentional infliction of emotional distress committed by Defendants. This intentional infliction of emotional distress may require lifetime counseling and psychological treatment.

These collective allegations do not describe an inability to function on a daily basis. In plaintiff's Affidavit (ECF 34), submitted as an exhibit to the Amended Complaint, B.N.S. describes feeling "very insecure and anxious," and missing school for a week and soccer for a longer period, although it appears the missed time is largely attributable to plaintiff's physical limitations.[4] *Id.* at 3 ("I was not allowed to play soccer for my school team for a month cause my coach said there's a Maryland law that if you have a concussion you have to sit out for a certain amount of time."). B.N.S. describes talking to her school counselor about her feelings, and describes continued episodes of anxiety, tearfulness, and reluctance to ride her bike. *Id.* at 3-4. It is clear, however, that B.N.S. is continuing to attend school and was able to return to soccer after a period of time. *Id.*

Further, as in *Manikhi*, the allegations about B.N.S.'s psychological treatment do not establish the nature or regularity of the treatment she has sought, and do not therefore allege that

---

[4] The minor's more serious physical injuries after the incident, including concussion and whiplash, may not be attributable to the actions of the officers, because plaintiff had been rendered unconscious by the motor vehicle impact before the officers even arrived on the scene. *See* ECF 32, ¶ 23.

her condition is severe. Plaintiff's only reference to treatment or counseling is her mention of conversations with her school counselor. *Id.* at 3. Accordingly, the allegations are not enough to nudge the claim of severe emotional trauma "across the line from conceivable to plausible," as required by the pleading standards. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Therefore, plaintiff's IIED claim is subject to dismissal for failure to allege facts sufficient to allege a plausible claim of intentional infliction of emotional distress.[5]

### F. Counts I and III: Excessive Force and False Arrest against the Police Officers and the City

The heart of plaintiff's claims consists of the allegations of the use of excessive force and false arrest, lodged under the Fourth Amendment against the City and the police officer defendants who responded to the scene following the accident. ECF 32.[6] The parties have submitted video recordings from the officer body-worn cameras and from cameras at the police station, in addition to declarations and police reports. Plaintiff has also submitted an affidavit, in addition to medical records. ECF 34.

### 1.

The City contends that, to the extent plaintiff lodges a common law tort claim of false arrest, it is protected by governmental immunity. ECF 37-2 at 11.[7] Moreover, the defendants assert that there is "no clearly established law that would have prohibited the Officers from detaining B.N.S. at the scene of an accident in which she potentially had sustained a head

---

[5] In view of the disposition, I need not reach the defense claim of governmental immunity. *See* ECF 37-2 at 11.

[6] The claims were asserted against the other defendants, but suit has been resolved against them on other grounds.

[7] The false arrest claim appears to be based on the Fourth Amendment.

injury." *Id.* at 30.  They also maintain that they "could not accept [a minor's] refusal of medical care . . . ."  *Id.*  Therefore, the police officer defendants argue that they are protected by qualified immunity.

The Fourth Amendment guarantees, *inter alia*, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend IV.  It is made applicable to the States through the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).  Section 1983 provides a damages remedy for violations of the Fourth Amendment.  *See, e.g.*, *Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("§ 1983 allow[s] a plaintiff to seek money damages from government officials who have violated his Fourth Amendment rights.").

"The Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen."  *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  The "'question [is] whether the totality of the circumstances justified a particular sort of . . . seizure.'"  *Buchanan*, 325 F.3d at 527-28 (alternation in original) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Whether an officer has used excessive force is analyzed under an objective reasonableness standard.  *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (enbanc).  To determine the reasonableness of an officer's actions "'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham*, 490 U.S. at 396).  Notably, the officer's actions are examined "in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation."  *Graham*, 490 U.S. at 397; *accord Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017)

("'Subjective factors involving the officer's motives, intent, or propensities are not relevant.'") (quoting *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994)).

As the Fourth Circuit recently explained in *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018),[8] *Graham* looks to three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. However, these factors are not "exclusive," and there could be other "objective circumstances potentially relevant to a determination of excessive force." *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015). Moreover, the court must consider "the proportionality of the force in light of all the circumstances.'" *Ray*, 781 F.3d at 101 (quoting *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005))).

*E.W.* involved the handcuffing of a ten-year-old at school. In assessing the excessive force issue, the Court thought it "prudent" to consider, *inter alia*, the suspect's age and the school context. The *E.W.* Court emphasized that the Fourth Amendment requires an assessment of the reasonableness of using handcuffs based on the circumstances. *E.W.*, 884 F.3d at 180; *see United States v. Drayton*, 536 U.S. 194, 201 (2002) ("For the most part *per se* rules are inappropriate in the Fourth Amendment context."); *Garner*, 471 U.S. at 7-8 (concluding that probable cause to arrest does not automatically justify manner in which search or seizure is conducted). In *E.W.*, the Court concluded, under the circumstances, that the decision to handcuff E.W. was unreasonable. *Id.*[9]

---

[8] *E.W.* was decided on February 12, 2018, before the Motion was filed and briefed. However, the parties did not cite the case.

[9] The *E.W.* Court ultimately concluded that the school resource officer was protected by qualified immunity. In this case, however, the allegations of excessive force involve more than the handcuffing of the plaintiff.

In reaching this conclusion, the Court looked to the severity of the underlying offense. *Graham*, 490 U.S. at 396. The officer knew that E.W. "had at most committed misdemeanor assault in the second degree by hitting another little girl for stepping on her foot. *See* Md. Code Ann. Crim. Law § 3-203(a)." *Id.* The Court reasoned that "because assault is an offense that can be considered violent if committed by any person, even a child . . . this factor weigh[ed] against E.W. This finding is tempered, though, by the fact that the offense is a misdemeanor.[1]" *Id.*

According to the Court, the second factor identified in *Graham*, whether the suspect poses an immediate threat to the safety of the officer or others, weighed strongly in E.W.'s favor. In assessing the threat an individual poses, the Court recognized that it is often useful to consider the suspect's conduct at the time of the arrest and "the size and stature of the parties involved." *E.W.*, 884 F.3d at 180-181; *see* 490 U.S. at 396. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1030 (9th Cir. 2014) (en banc); *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004).

In addition, the third factor – whether the suspect was resisting arrest or trying to flee – also weighed in favor of the child. *E.W.*, 884 F.3d at 181. The facts showed E.W. posed no immediate threat to the safety of the officer or others so as to justify the use of handcuffs. *Id.*

## 2.

Defendants assert that "[i]n Maryland, counties and municipalities, as instrumentalities of the State, are immune from suit on common law, non-constitutional torts that stem from the exercise of a governmental, rather than proprietary, function." ECF 37-2 at 11. However, counties and municipalities have "consistently been treated differently from State agencies and the State itself for purposes of immunity from suit." *Bd. Of Educ. Of Prince George's Cty. v. Town of Riverdale*, 320 Md. 384, 389, 578 A.2d 204, 210 (1990). They are not entitled to

immunity based on violations of constitutional rights. *Id.*; *see Clea v. City of Baltimore*, 312 Md. 662, 667-668 n.3, 541 A.2d 1303, 1305 n.3 (1988). And, "[i]n the absence of a statute, 'an official who violates an individual's rights under the Maryland constitution is not entitled to any immunity' . . . ." *Town of Port Deposit v. Petetit*, 113 Md. App. 401, 416, 688 A.2d 54, 62 (1997) (citation omitted). Moreover, as to ordinary tort actions, counties and municipalities "can rely on the defense of governmental immunity only when they exercise" a governmental function. *Town of Riverdale*, 320 Md. at 389-90, 578 A.2d at 210.

As to the individual officer defendants, "[q]ualified immunity shields government officials who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015) (internal quotations omitted); *see also Osborne v. Georgiades*, 679 F. App'x 234, 237 (4th Cir. 2017); *Scinto*, 841 F.3d at 235. In *Owens*, 767 F.3d at 395, the Fourth Circuit reiterated: "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also District of Columbia v. Wesby*, ___ U.S. ___, 137 S. Ct. 577, 589 (2018); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Saucier v. Katz*, 533 U.S. 194, 206 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Wilson v. Prince George's Cty., Md.*, 893 F.3d 213, 219 (4th Cir. 2018); *Spivey v. Norris*, 731 F. App'x 171, 175 (4th Cir. 2018); *O'Neal v. Rollyson*, 729 F. App'x 254, 255 (4th Cir. 2018) (per curiam); *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 582-83 (4th Cir. 2017); *Goines v. Valley Cnty. Servs. Bd.*, 822 F.3d 159, 170 (4th Cir. 2016); *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013); *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013); *Merchant v. Bauer*, 677 F.3d 656,

661 (4th Cir. 2012), *cert. denied*, 568 U.S. 1068 (2012).  Thus, "a government official who is sued in his individual capacity may invoke qualified immunity."  *Bland*, 730 F.3d at 391; *see Harlow*, 457 U.S. at 818.

Notably, qualified immunity is an "'immunity from suit rather than a mere defense to liability' . . . ."  *Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in *Mitchell*).  Accordingly, the immunity is "'effectively lost if a case is erroneously permitted to go to trial.'"  *Ussery*, 786 F.3d at 337 (quoting Mitchell, 472 U.S. at 526).

As the Supreme Court has explained, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson*, 555 U.S. at 231.  "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *accord Stanton v. Sims*, 571 U.S. 3, 5-6 (2013) (per curiam).  Moreover, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Pearson*, 555 U.S. at 231.

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow*, 457 U.S. at 818, and so an officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity.  The doctrine protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'"

26

*Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). In other words, qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, ___ U.S. ___, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). However, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity,' the defendant bears the initial burden 'of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties.'" *Henry v. Purnell*, 501 F.3d 374, 377 n.2 (4th Cir. 2007) (en banc), *cert. denied*, 565 U.S. 1062 (2011) (citation omitted).

The Fourth Circuit has explained: "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question." *Scinto*, 841 F.3d at 235 (citations omitted); *see also Cannon v. Village of Bald Head Island, NC*, 891 F.3d 489, 497 (4th Cir. 2018). Thus, the qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional [or statutory] right," *Saucier,* 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant*, 677 F.3d at 662 (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)); *see Wesby*, 138 S. Ct. at 589; *Owens,* 767 F.3d at 395-96. The "two inquiries . . . may be assessed in either sequence." *Merchant*, 677 F.3d at 661-62; *accord Sims v. Labowitz*,

885 F.3d 254, 260 (4th Cir. 2018); *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018).

If an officer is shown to have violated the rights of a plaintiff, courts must then "evaluate whether the right at issue was 'clearly established' at the time of the officer's conduct.[] Accordingly, even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)) (other citation omitted); *see also Greene v. Feaster*, 733 F. App'x 80, 82 (4th Cir. 2018) (per curiam) ("Even when a prison official [is shown to have violated a constitutional right of a plaintiff], qualified immunity will shield him from liability as long as his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Goines*, 822 F.3d at 170).

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818-19.

To determine whether the right was clearly established, the court first must define the right at issue. *Scinto,* 841 F.3d at 235; *see Occupy Columbia*, 738 F.3d at 118. "A right is

clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, ___U.S. ___, 135 S. Ct. 348, 350 (2014) (quoting *Creighton*, 483 U.S. at 640). Notably, "a right may be clearly established by any number of sources, including a . . . case, a statute, or the Constitution itself." *Owens,* 767 F.3d at 399.

Generally, to "determine whether a right is clearly established", courts "assess whether the law has 'been authoritatively decided by the Supreme Court,[] the appropriate United States Court of Appeals, or the highest court of the state.'" *Wilson*, 893 F.3d at 221 (citation omitted); *see Doe ex rel. Johnson v. S.C. Dept. of Soc. Servs.,* 597 F.3d 163, 176 (4th Cir. 2010) (stating that "'ordinarily [courts] need not look beyond the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of the state in which the case arose'" as of the date of the conduct at issue), *cert. denied*, 562 U.S. 890 (2010). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll*, 135 S. Ct. at 350 (quoting *al-Kidd*, 563 U.S. at 741); *see Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148, 1152 (2018); *White v. Pauly,* ___ U.S. ___, 137 S. Ct. 548, 551 (2017) (*per curiam*); *San Francisco v. Sheehan*, ___U.S. ___, 135 S. Ct. 1765, 1774 (2015); *Plumhoff v. Rickard*, ___ U.S. ___, 134 S. Ct. 2012, 2023 (2014); *see also Reichle*, 132 S. Ct. at 2093 ("To be clearly established, a right must be sufficiently clear that 'every reasonable official would [have understood] that what he is doing violates that right.'") (citation and some quotation marks omitted).

Notably, "[a] right need not be recognized by a court in a specific factual context before such right may be considered 'clearly established' for purposes of qualified immunity." *Wilson*, 893 F.3d at 221 (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Indeed, the Supreme Court has never required a "'case directly on point for a right to be clearly established.'" *Kisela*, 138 S.

Ct. at 1152 (quoting *White*, 137 S. Ct. at 551); *see al-Kidd*, 563 U.S. at 741; *see also Crouse*, 848 F.3d, at 582-83.  But, "courts are 'not to define clearly established law at a high level of generality.'"  *Wilson*, 893 F.3d at 221 (quoting *Kisela*, 138 S. Ct. at 1152); *see also Sheehan*, 135 S. Ct. at 1775-76.  Therefore, courts are to "consider whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'"  *Adams*, 884 F.3d at 227 (quoting *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015)) (per curiam).

The central question is "whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted."  *See Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015).  To defeat qualified immunity, "'the existing authority must be such that the unlawfulness of the conduct is manifest.'"  *Merchant*, 677 F.3d at 665 (quoting *Layne*, 141 F.3d at 114); *see Bland*, 730 F.3d at 391 (stating that "[f]or a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right") (internal quotations omitted).

At this juncture, it is premature to determine whether the officer defendants are entitled to qualified immunity as to some or all of their claims.  This is because the legal determination necessarily turns on the facts, and at this juncture I must assume the truth of plaintiff's allegations.

I am satisfied that, as to the § 1983 excessive force and false arrest claims, plaintiff has met the required plausibility standard in the Amended Complaint.  *Twombly*, 550 U.S. at 570 (requiring a complaint to contain facts sufficient to "state a claim to relief that is plausible on its face"); *Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . .") (citation omitted).

### G.     *Monell* **liability**

In Count V, plaintiff alleges a *Monell* custom or practice claim against the defendants. She asserts a "pervasive pattern of lawlessness and use of excessive force . . . ." ECF 32, ¶ 62. Further, she asserts failure to train the police officers. *Id.* ¶ 63; *see also id.* at 14.[10] According to B.N.S., the City maintains a policy "to inadequately train and supervise its police officers, including the defendant officers and thereby fail to discourage further constitutional violation on the part of its officers." ECF 32 at 14, ¶ 63.

A municipality is subject to suit under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). The Supreme Court determined in *Monell* that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only where those defendants were executing an official policy or custom of the local government resulting in a violation of the plaintiff's rights. *Id.* at 690-91. The Court said that, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id.* at 694; *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). But, liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).

A viable § 1983 *Monell* claim has two elements:   (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g., Bd. of Comm'rs of Bryan Cty., v.*

---

[10] Count V contains paragraphs 61, 62, 63, 64 and 60.  Count VI begins with paragraph 61.

*Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

A plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999).

To impose liability on a municipality, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation" of constitutional rights. *Jordan by Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994). However, a municipality cannot be held liable in a § 1983 action under a theory of *respondeat superior. Monell*, 436 U.S. at 693-94. Rather, "[l]iability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell*, 436 U.S. at 694). In other words, a municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is . . . the 'moving force' behind the particular constitutional violation." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal citations omitted); *see Moore v. Howard County Police Dep't*, No. CCB-10-1430, 2010 WL 4722043 at *2 (D. Md. Nov. 15, 2010). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Comm'rs of Bryan Cty.*, 520 U.S. at 403-04.

"An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently

and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (alteration in *Semple* and citations omitted). In addition, "the governmental unit may create an official policy by making a single decision regarding a course of action in response to particular circumstances." *Id.*

"Outside of such formal decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Carter*, 164 F.3d at 218 (quoting *Monell*, 436 U.S. at 691); *see Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 670 (D. Md. 2003). A custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell*, 824 F.2d at 1387. In addition, "a policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan*, 743 F.2d at 229 (internal citations omitted).

A policy or custom that gives rise to § 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan*, 743 F.2d at 230. Only when a municipality's conduct demonstrates a "deliberate indifference" to the rights of its inhabitants can the conduct be properly thought of as a "policy or custom" actionable under § 1983. *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997) (citing *Canton*, 489 U.S. at 389).

In *City of Canton v. Harris*, 489 U.S. 378, the Supreme Court said that "where a municipality's *failure to train* its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants . . . such a shortcoming [can] be properly thought of as a city *'policy or custom'* that is actionable under § 1983." *Id.* at 389. (Emphasis added). Indeed, the manner in which a police force chooses to train its officers is "necessarily a matter of 'policy' . . . ." *Spell*, 824 F.2d at 1389. As a result, "the inadequacy of police training may serve as the basis for § 1983 liability[, but] only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388.

*Connick v. Thompson*, 563 U.S. 51 (2011), also provides guidance. In *Connick*, respondent Thompson was prosecuted and convicted at separate trials for attempted armed robbery and murder. *Id.* at 54. But, his convictions were vacated when it was discovered that the prosecution failed to disclose the existence of a certain crime lab report. *Id.* Based on the violation of *Brady v. Maryland*, 373 U.S. 83 (1963), Thompson filed a § 1983 suit against Harry Connick, in his official capacity as the Orleans Parish District Attorney. *Id.* He alleged, *inter alia*, a "deliberate indifference to an obvious need to train prosecutors to avoid such constitutional violations." *Id.* at 56.

The district court ruled that, in order to establish deliberate indifference, Thompson was not required to show a pattern of similar *Brady* violations when he could demonstrate that "the need for training was obvious." *Id.* at 58. The jury found for Thompson and awarded him damages. *Id.* A divided Fifth Circuit affirmed. *Id.* On certiorari, the Supreme Court considered whether a "district attorney's office [could be] held liable under § 1983 for failure to train its prosecutors based on a single *Brady* violation." *Id.* at 54.

The Supreme Court explained, *id.* at 60-61 (emphasis in *Connick*):

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692[ ] (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479[ ] (1986) (citing *Monell*, 436 U.S. at 665-683). They are not vicariously liable under § 1983 for their employees' actions. *See id.*, at 691 [ ]; *Canton*, 489 U.S. at 392; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 [ ](1997) (collecting cases).
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691 [ ]; *see id.*, at 694 [ ]. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *See ibid.*; *Pembaur*, *supra*, at 480-481 [ ]; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur*, *supra*, at 479-480 [ ].

Citing *Canton*, 489 U.S. 378, the *Connick* Court "sought not to foreclose the possibility . . . that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. Nevertheless, the *Connick* Court said, *id.* at 61:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*").

"[W]hen alleging an inadequate training policy, a complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." *Lewis v. Simms*, No. AW-11-CV-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012) (quoting

*Drewry v. Stevenson,* No. WDQ–09–2340, 2010 WL 93268, *4 (D. Md. Jan. 6, 2010)), *aff'd*, 582

F. App'x 180 (4th Cir. 2014). As the *Connick* Court observed, 563 U.S. at 60: "To satisfy [§

1983], a municipality's failure to train its employees in a relevant respect must amount to

'deliberate indifference to the rights of persons with whom the [untrained employees] come into

contact." (Alteration in *Connick*) (citing *Canton*, 489 U.S. at 388). The *Connick* Court added,

563 U.S. at 61: "Only then 'can such a shortcoming be properly thought of as a city "policy or

custom" that is actionable under § 1983.'" (Quoting *Canton*, 489 U.S. at 389).

Notably, even if "a particular officer may be unsatisfactorily trained[, that] will not alone

suffice to fasten liability on the city, for the officer's shortcomings may have resulted from

factors other than a faulty training program." *Canton*, 489 U.S. at 390-91. The *Canton* Court

explained, *id.* at 391:

> Neither will it suffice to prove that an injury or accident could have been avoided
> if an officer had had better or more training, sufficient to equip him to avoid the
> particular injury-causing conduct. Such a claim could be made about almost any
> encounter resulting in injury, yet not condemn the adequacy of the program to
> enable officers to respond properly to the usual and recurring situations with
> which they must deal. And plainly, adequately trained officers occasionally make
> mistakes; the fact that they do says little about the training program or the legal
> basis for holding the city liable.

*See also Connick*, 563 U.S. at 68.

In *Peters v. City of Mount Rainier*, No. GJH-14-00955, 2014 WL 4855032 (D. Md. Sept.

29, 2014), the plaintiff lodged a § 1983 claim for failure to train the police force. *Id.* at *5. The

complaint stated, *id.* (alteration in *Peters*) (quoting the complaint):

> [T]he City maintained an "official policy" of . . . "fail[ing] to properly train and
> supervise its officers; fail[ing] to implement effective procedures for investigating
> allegations of police misconduct; fail[ing] to discipline officers who violate the
> Constitutional rights of private citizens through false arrests, malicious
> prosecutions, and brutal conduct; and generally fail[ing] to provide safeguards
> against Constitutional abuses by its overzealous officers."

In considering whether to dismiss the failure to train claim, Judge Hazel highlighted the complaint's failure to allege facts concerning the "'nature of the training'" or "'that the officer's conduct resulted from said training.'" *Peters*, 2014 WL 4855032, at *5 (quoting *Lewis v. Simms*, *supra*, 2012 WL 254024, at *1). He noted: "Peters has not even attempted to allege any such facts; instead, he has simply stated in broad, conclusory terms and in a variety of different ways that the City failed to train and supervise its officers." *Id.* at *5 (citation to the record omitted). Emphasizing this deficiency, Judge Hazel concluded that the plaintiff's allegation was "nothing more than a bare-bones generalization that a legal element (*i.e.* the policy[-]or-custom element) is met. Without more, Peters has failed to adequately allege the existence of a policy or custom through the City's purported failure to train its officers." *Id.*

*Hall v. Fabrizio*, No. JKB-12-754, 2012 WL 2905293 (D. Md. July 13, 2012), is also instructive. There, Judge Bredar dismissed a failure to train claim against the Baltimore Police Department because "the complaint [did] not allege any facts regarding the sort of training that Baltimore police officers actually receive or how that training reflects the decision of any municipal policymaker." *Id.* at *2.

*Canton*, *Connick*, *Hall*, and *Peters*, among other cases, teach that stating a claim for failure to train requires more than bald assertions that police officers were not properly trained. The allegations here are woefully insufficient to state a *Monell* claim against the City.

The claim is subject to dismissal.

### H. Punitive Damages

Plaintiff seeks punitive damages against all defendants. The defense asserts that the City is immune from such damages under § 1983 and State law. Plaintiff concedes such damages are not recoverable against the City. ECF 42-1 at 12-13.

Under Maryland law, a local government may not be liable for punitive damages.  *See* Maryland Code, § 5-303(c)(1) of the Courts and Judicial Proceedings Article.  Nor does § 1983 authorize such damages.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Therefore, that claim shall be dismissed.

## IV.  Conclusion

For the reasons set forth above, I shall grant in part and deny in part defendants' Motion. An Order follows, consistent with this Memorandum Opinion.


Dated:  November 6, 2018                                    _____/s/_____
                                                                        Ellen L. Hollander
                                                                        United States District Judge